# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

---

## MURRAY CURE INSTITUTES COMPANY v. JOHN O. McCLURE.[1]

January 21, 1910.

Nos. 16,394—(129).[2]

**Contract Construed — Release of Claim.**

A contract, set out in the opinion, construed, and *held* not to release the defendant's claim for damages on account of alleged injuries sustained before the contract was executed.

Action in the district court for Hennepin county to recover $225 for services and medical attendance. The facts are fully stated in the opinion. The case was tried before Simpson, J., and a jury which returned a verdict in favor of defendant for one dollar. Plaintiff's motion for judgment in its favor for $50, notwithstanding the verdict, was granted. From the judgment entered pursuant to the order, defendant appealed. Reversed and remanded, with direction to enter judgment for defendant upon his verdict.

*L. W. Collins* and *A. M. Harrison,* for appellant.

*Mead & Robertson,* for respondent.

[1]Reported in 124 N. W. 213.  [2]October, 1909, term calendar.

110 M.—1.

START, C. J.

Appeal from the judgment of the district court of the county of Hennepin in an action by the plaintiff, which is in the business of treating patients for the liquor habit, to recover for services rendered to the defendant. The amended complaint alleged that between November 19 and December 24, 1907, the plaintiff, pursuant to a contract between the parties, furnished the defendant with medical services and attendance of the value of $225. The amended answer admitted and alleged that he became a patient at the hospital of the plaintiff on November 14, 1907, and so continued to be until December 24 next following, and that the value of plaintiff's medical services and attendance rendered to him did not exceed $50. The answer also alleged a counterclaim to the effect that the defendant, while he was a patient of the plaintiff, was seriously injured and disabled by the burning of his legs, which was caused by the negligence of the plaintiff and its servants, whereby he was damaged in the sum of $10,137.50. The reply denied that the defendant was its patient prior to November 19, when he applied to the plaintiff for treatment for the liquor habit in its institute; that in consideration of the plaintiff so receiving him for treatment, and at that time, which was long after the alleged injuries to him had been inflicted, he released, in writing, the plaintiff from "all claims or demands on account of anything resulting or accruing from its treatment of the defendant therein."

The record discloses evidence tending to show that on the afternoon of November 14, 1907, the defendant was brought to and was received into the plaintiff's hospital in an unconscious and dying condition, where he remained until December 24 following; that he remained in a delirious condition for some five days, during which time he was treated by the plaintiff; that a part of the treatment consisted in placing between his legs bottles or bags filled with hot water, which were allowed to remain there until both of his legs were seriously burned; and, further, that the next day after he ceased to be delirious the plaintiff's secretary filled the blanks on a page of a book kept at the institute, with defendant's answers to questions asked him, which the defendant, upon request, signed.

This record was a part of a regular record book kept by the plaintiff, which seems to have been printed; except the answers to the questions, which were written into the blank spaces left for that purpose. In this case there were a large number of questions which related to the history of the defendant; his habits and the diseases which he had had. Following the questions was the provision following: "For the purpose of being accepted as a patient and receiving treatment with the Murray Liquor Cure, the undersigned hereby applies to receive said treatment voluntarily and at his own risk, and, in consideration of his acceptance as a patient, hereby, on behalf of himself, his heirs, executors, administrators and next of kin, releases the Murray Cure Institutes Company, its physicians and employees, from all claims or demands on account of anything resulting or accruing from said treatment, hereby guaranteeing the correctness of the foregoing answers. I further promise that I will not enter a saloon or take a drink of spirituous or malt liquor while under treatment." Then followed the defendant's signature.

It was the usual custom of the plaintiff to require all patients to sign a similar record. After the defendant's answers had been written in the book, the secretary handed it to him and said: "There is a contract we ask our patients to sign. Read it over and sign it, please." The secretary testified to the effect that he did so, and that when he signed the book he was perfectly rational; that he then had been in the institute five days. The defendant gave testimony to the effect that it was two weeks before he could remember anything, and further as follows: "Q. Was anything in the nature of a contract read to you at that time? A. Not to my best knowledge and belief. He had either a book or a paper. He asked me questions and put them down evidently. Q. And did he tell you to sign it? A. Yes, sir. Q. So you signed it? A. Yes, sir; in connection with the treatment, the only paper I signed and gave to them, or allowed them to retain." There was no evidence of any talk whatsoever between the parties with reference to the defendant's injuries, or as to any release by the defendant of any claim for damages therefor.

The trial court submitted the plaintiff's cause of action and the defendant's counterclaim to the jury, and instructed them to the

effect that the clause in the written contract releasing the plaintiff from liability had no application to the injury for which the defendant claimed damages in this case, but that the contract was properly in evidence only as a contract of employment, showing a request and a promise by the defendant to pay for the plaintiff's services. The plaintiff at no time excepted to this instruction. The jury were also instructed to adjust the relative claims of the parties and return a verdict for the one in whose favor they found the balance to be. The verdict was for the defendant for one dollar. Thereupon the plaintiff made a motion, as limited upon the hearing, for judgment in its favor for $50, the amount admitted by the answer, notwithstanding the verdict. The trial court granted the motion on the ground that the clause in the contract releasing the plaintiff from liability was voluntarily executed by the defendant when in the full possession of his faculties, that his treatment was one continuous transaction, and that the contract was a bar to any recovery for his injuries. Whether the defendant was competent to and did intelligently sign the release was treated by the trial court on the hearing of the motion as a question of law, and solved in favor of the plaintiff. Counsel for the defendant urges that it was a question of fact, in view of the defendant's mental and physical condition and the circumstances under which he signed the contract.

We find it unnecessary to discuss or decide this question, for we are of opinion that the further contention of defendant's counsel, to the effect that the contract cannot fairly be construed as releasing his claim for injuries sustained prior to the execution of the contract, must be sustained; or, in other words, that the construction given to the contract by the court at the trial was the correct one.

If, upon a consideration of the language of this contract and the circumstances under which it was made, it is fairly open to two constructions, the court should adopt the one most favorable to the defendant; for the contract was prepared by the plaintiff for its own benefit and in language of its own choice, and presented to the defendant for his signature without any previous negotiations between them as to its subject-matter. The contract must also be construed with reference to the situation of the parties, the defendant's then

mental condition, and the circumstances under which it was signed, which the evidence to which we have referred tends to establish, and also in connection with the claim made by plaintiff in its reply and evidence, to the effect that the defendant was not its patient when he was injured, and that relation did not exist until the day the contract was signed.

Now, reading this contract in the light of the circumstances indicated, it is quite clear that it speaks as of the present, and deals with the future, and not with the past. It does not express any purpose on the part of the defendant to release any claim he might have for past injuries, and, if read by one who had no knowledge of the existence of such prior injuries, it is doubtful if it would occur to him that the release could be construed retrospectively. The here material language of the contract is this: "For the purpose of being accepted as a patient and receiving treatment * * * the undersigned hereby applies to receive said treatment, * * * and in consideration of his acceptance as a patient * * * hereby * * * releases * * * from all claims or demands on account of anything resulting or accruing from said treatment." The import of this language is that the treatment applied for was to be given in the future, and that the release related to such treatment, and not to injuries sustained by the defendant several days before he applied for the treatment as stated in the contract, and at a time when the defendant, according to the allegations of plaintiff's reply, was not its patient. This contract can only be construed so as to be a bar to any claim for damages sustained by defendant before it was made by reading into it by implication a release of such claim. Neither the language of the contract, nor the circumstances under which it was made, justify such a construction.

We hold that the release was not a bar to the defendant's claim for damages in this case. It follows that the judgment must be reversed, and case remanded, with direction to the district court to enter judgment for the defendant upon his verdict.

So ordered.