WETZEL v. ROBERTS.

1. CONTRACTS—ARCHITECT'S SERVICES.

Architect may not recover under his contract for services rendered owner for fees based upon amount it would cost to do work according to terms of construction contract where, because amount of bid pursuant to plaintiff's plans was so much greater than limitation which had been previously fixed by owner and communicated to architect, owner refused to execute a construction contract according to plaintiff's plans and later had the remodeling done pursuant to another plan.

2. SAME—CONDITION PRECEDENT—ARCHITECT'S SERVICES—CONSTRUCTION CONTRACTS.

Owner's limitation of $15,000 on amount he was willing to expend in remodeling building used for bowling alleys, incident to his lease thereof, constituted a condition precedent to contract for architect's services which based fees upon amount it would cost to do work according to terms of construction contract to be entered into; hence, where bid of $28,000 for construction according to plaintiff's plans was so greatly in excess of such limitation that no construction contract was executed in accordance with such plans, architect could not recover fees provided in his contract.

3. WORK AND LABOR—EVIDENCE.

In action wherein plaintiff, seeking recovery of fees for his services as an architect, not only sought recovery under the contract but also declared on the common counts, no recovery could be had on *quantum meruit* where there was no proof of the value of services to sustain recovery.

4. APPEAL AND ERROR—STATEMENT OF QUESTIONS INVOLVED—QUESTIONS REVIEWABLE.

In action for architect's services brought against two defendants and judgment entered in favor of both, where plaintiff makes no mention in reference to claim against one defendant in his statement of questions involved, such claim is not considered on appeal (Court Rule No. 67, § 1 [1933]).

As to conditions in contracts generally, see 1 Restatement, Contracts, § 250 *et seq.*

Appeal from Wayne; Miller (Guy A.), J. Submitted October 9, 1940. (Docket No. 21, Calendar No. 41,037.) Decided January 6, 1941.

Assumpsit by Bernard C. Wetzel, doing business as B. C. Wetzel & Company, against Charles J. Roberts and Detroit Trust Company for architectural services. Judgment for defendants. Plaintiff appeals. Affirmed.

*Albert McClatchey* and *Corie C. Coburn,* for plaintiff.

*Frank G. Schemanske,* for defendant Roberts.

*Miller, Canfield, Paddock & Stone,* for defendant Detroit Trust Company.

McALLISTER, J. Plaintiff sued defendant Roberts and the Detroit Trust Company on a contract for architectural services, declaring also on the common counts. On a trial before the court without a jury, a judgment of no cause of action was rendered, and plaintiff appeals.

Defendant Roberts occupied premises under a lease from the trust company. The property had formerly been used as a garage, but had been converted into a bowling alley. Prior to the expiration of his lease, Roberts had contemplated making some building alterations in order to increase the number of alleys. William A. Heartt, a real-estate broker, approached Roberts as a broker acting as the agent of the trust company in order to effect a new lease. Roberts testified that he told Heartt he would spend $12,000 in improvements, if he secured a lease under certain conditions; and after negotiations with the trust company, he finally agreed to go as high as

$15,000 for such building alterations. Prior to the execution of the lease, Heartt recommended Wetzel as the architect for the alterations. It is Roberts' claim that he told Heartt that in no case would he put more than $15,000 into the proposed reconstruction of the building. Heartt consulted Wetzel, and testified that he told Wetzel of Roberts' statement to him about the limitation of cost. He testified:

"*Q.* Now, you say, when you did go to see Mr. Wetzel you told him that Mr. Roberts wanted to put these improvements in, wanted to lease the building from the trust company, and that the cost of the improvements was not to be less than $10,000 nor more than $15,000?

"*A.* I told him that was his statement, yes, sir.

"*Q.* What did Mr. Wetzel say as to being able to prepare plans and specifications?

"*A.* There was no comment on that by Mr. Wetzel as far as I remember at that time. * * *

"*Q.* Your letter states Mr. Roberts was willing to take a lease if he could put in improvements contemplated there at not less than $10,000 nor more than $15,000?

"*A.* Yes. * * *

"*Q.* Did you ever tell Mr. Wetzel that Mr. Roberts would be willing to pay more than $15,000 for the improvements?

"*A.* No, that was not brought up at all."

This testimony was not controverted by plaintiff Wetzel who was a witness on the hearing of the case. Roberts testified that during these transactions he repeatedly told Heartt that in no case could he invest more than $15,000 in the building and that Heartt repeatedly told him that the work could be done within such limits. Sometime after the conferences between Heartt and the architect Wetzel, there was a meeting between Roberts and Wet-

zel. A contract was presented by Wetzel which was executed by him and defendant Roberts. No amount was specified in the contract for the cost of the architectural services to be rendered, nor was anything mentioned as to how much the work would cost.

The pertinent portions of the contract are as follows:

"The owner agrees to pay the architect at the rate of 10 per cent., hereinafter called the basic rate, computed and payable as stated in the said 'Conditions,' and to make any other payments and reimbursements arising out of the said 'Conditions.' * * *

"It is mutually understood and agreed that a trust fund of $5,000 will be deposited by the owner with the Detroit Trust Company May 1, 1936, and further deposits beginning October 15, 1936, of not less than $1,000 per month, to be administered in the payment of the contractor, or contractors and the architect, on said improvements, and that the architect shall be paid 10 per cent. of each requisition drawn for material or labor on account of said improvements, until the fee of the architect shall have been fully paid. * * *

"Article 1.  The Architect's Services—The architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full sized detail drawings; the drafting of forms of proposals and contracts, the issuance of certificates of payment; the keeping of accounts, the general administration of the business and supervision of the work.

"2.  The Architect's Fee—The fee payable by the owner to the architect for the performance of the above services is the percentage hereinbefore defined as the basic rate, *computed upon the cost of the work in respect of which such services have been performed, subject, however, to any modifications growing out of these conditions of agreement.* * * *

"4. Extra Services and Special Cases—If after a definite scheme has been approved, the owner makes a decision which, for its proper execution, involves extra services and expenses for changes in or additions to the drawings, specifications or other documents; or if a contract be let by cost of labor and material plus a percentage of fixed sum; or *if the services of the architect are rendered for work contemplated but not executed or if the architect is put to labor or expense by delays caused by the owner or a contractor, or by delinquency or insolvency of either, he shall be equitably paid for such extra service and expense.*

"*The basic rate hereinbefore defined is to be used when all of the work is let under one contract.* \* \* \*

"*Should the work or any part of it be abandoned or suspended* or should the owner vary the amount of any contract by accepting a credit for the omission or modification of any work covered by it, *the architect is to be paid in accordance with the terms of this agreement for the proportion of his service rendered on account of it up to the time of such abandonment, suspension or acceptance.* \* \* \*

"5. Payments—Payments to the architect on his fee are due as his work progresses in the following order: upon completion of the preliminary studies, 20 per cent. of the entire fee; upon completion of specifications and general working drawings (exclusive of details), 40 per cent. additional of the entire fee, the remainder being due from time to time in proportion to the amount of service rendered. Payments to the architect other than those on his fee, and all reimbursements of costs fall due from time to time as his work is done or as costs are incurred: *Until contracts are signed* charges are to be based upon a *reasonable estimated cost of the work* and payments received are on account of the entire fee. \* \* \*

"10. Definition of Cost of Work—The words, 'cost of the work' as used in this article 2 hereof

are ordinarily to be interpreted as meaning the *total of the contract sums incurred for the execution of the work,* not including architect's and engineer's fees, or the salary of the clerk-of-the-works, but in certain rare cases, *e. g.,* when labor or material is furnished by the owner below its market cost or when old materials are reused the cost of the work is to be interpreted as the cost of materials and labor necessary to complete the work, as such cost would have been if all materials had been new and if all labor had been fully paid at market prices current when the work was ordered, plus contractor's profits and expenses.''

Further, the contract expressly purported to cover architectural costs, ''when a percentage of the cost of the work forms the basis of payment.'' In brief, it is provided that ''the cost of the work''· is to be interpreted (with exceptions that are not here involved) as meaning ''the total of the contract sums incurred for the execution of the work.'' The contract further provides that the owner agrees to pay the architect at the rate of 10 per cent., called the basic rate, computed and payable as stated in the conditions of the contract. The conditions of the contract provide that the fee to be paid the architect is a percentage defined as the basic rate, computed upon the *costs of the work* in respect to which such services have been performed. The basic rate ''is to be used *when all of the work is let under one contract.''* If the work is abandoned, the architect is to be paid in accordance with the terms of the agreement for the proportion of his services rendered on account of it up to the time of such abandonment. Payments to the architect, on his fees, are due as the work progresses in the following order: Upon completion of preliminary studies, 20 per cent. of the entire fee; upon completion of specifications and general working drawings, 40 per cent.

of the additional fee; the remainder being due from time to time in proportion to the amount of service rendered; but until the contract is signed, charges are to be based upon a reasonable estimated cost of the work.

In spite of obscurity and contradiction, it appears that the architect's fees are based upon a percentage, to be computed upon the cost of the work; and the cost of the work is to be based on the amount specified in the executed construction contract.

In this case no contract for the construction work was ever executed. When Roberts received the bid on the plans prepared by plaintiff, it amounted to $28,000. This was so much greater than the amount that he had planned upon, and so in excess of the limitation of expense which was communicated by Heartt to Wetzel, that Roberts refused to go ahead with the proposition. He later remodeled the building according to another plan. Plaintiff sued for 60 per cent. of a fee based upon 10 per cent. of the bid of $28,000, claiming that such sum was due him under the contract.

There is nothing in the terms of the contract which provides that the total fee of the architect would be 10 per cent. of the amount of a bid. The fee depends upon the letting of a contract. The architectural fees were based upon the total amount that it would cost to do the work, according to the terms of the construction contract. Apparently the form of contract here used was drafted to cover a case where the owner actually let a building contract; but it did not cover the case before us, where no building contract was ever executed. To sustain the claim of plaintiff it would be necessary to hold that no matter how large the bid for doing the work, Roberts would have been obligated to pay an architectural fee based upon the amount of such a bid. The

contract does not so provide, and Roberts did not so agree.

Furthermore, it appears that there was an oral condition precedent to the execution of the contract. Plaintiff had been advised before he commenced to prepare the plans and specifications that the cost of the improvements was not to exceed $15,000. In this regard it is of no consequence whether Heartt, who informed Wetzel of this limitation, was the agent of plaintiff or of Roberts. The evidence shows that, after being advised of the limitation, plaintiff drafted the plans and that there was no subsequent modification of this condition precedent. See *Cleveland Refining Co.* v. *Dunning,* 115 Mich. 238; *Rothstein* v. *Weeks,* 224 Mich. 548.

Plaintiff declared on the common counts as well as upon the contract. He does not appear to insist upon recovery on *quantum meruit;* but it is sufficient to say that there was no proof in the case of the value of his services to sustain a recovery on the common counts.

With regard to the plaintiff's claim against the Detroit Trust Company, which was alleged to have been a trustee for the payment of money for work performed in the reconstruction of the building, plaintiff makes no mention in reference thereto in his statement of questions involved. See Court Rule No. 67, § 1 (1933). But the foregoing disposition of the case, in any event, makes it unnecessary to discuss this contention or other claims on appeal.

The judgment of the circuit court is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.