Wickhem, J.
 

 Plaintiff is a licensed architect. The Milwaukee English Seventh-Day Adventist church is an unincorporated religious organization holding services in the city of Milwaukee. The individual defendants are members of the board of trustees of that church. The South Wisconsin Conference Association of the Seventh-Day Adventists is a corporation having certain supervisory powers over individual congregations of the church. Desiring to build a church building, the Milwaukee congregation instructed its trustees to investigate the feasibility of building a church for $40,000 or less. Plaintiff was consulted and submitted drawings and sketches in May of 1940. He then agreed that he would provide plans and specifications for the church conforming to these sketches within the limit of $40,000 and in time to have the foundations in before frost of that year. The parties thereupon executed an elaborate written contract prepared by plaintiff. The contract was executed July 23, 1940, by the board of trustees and the Milwaukee English Seventh-Day Adventist church of Milwaukee and plaintiff.- For a fee- of
 
 *364
 
 four and one-half per cent of the cost of the work plaintiff agreed to perform architect’s services, including conferences, preliminary studies, drawings, specifications, drafting of forms of proposal and contracts, issuance of certificates of payment, and general administration of the business and supervision of the work. The contract provided that if any work designed or specified by the architect was abandoned or suspended the architect was to be paid for the service rendered on account of it. The time of payment to the architect was prescribed by the contract as follows: On completion of the preliminary studies, a sum equal to twenty per cent of the basic rate computed on a reasonable estimate of cost; upon completion of specifications and general working drawings exclusive of details, a sum sufficient to increase payments on the fee to sixty per cent.
 

 The trial court found that prior to, or contemporaneous with the execution of the contract, it was orally agreed between the parties that the cost of the building was not to exceed $40,000 and that the foundation of the building was to be completed before frost. There were^various delays on the part of plaintiff in completing the specifications and claimed waivers of these delays by defendants, but in the light of our views upon the admissibility of evidence as to the above agreements, we shall not detail the evidence concerning these matters.
 

 On July 6, 1941, bids were received for excavation, concrete work, and heating, and from an examination of these bids it was evident that the reasonable cost of the building would be at least $60,050. On August 21, 1941, plaintiff was notified that the work was abandoned and his contract terminated. The court found that the plans, specifications, and working drawings were completed prior to this time and allowed plaintiff the sixty per cent of commission provided by the contract to be paid upon completion of performance to this extent, taking as a base an estimated reasonable cost of
 
 *365
 
 $60,000. In addition, the court allowed plaintiff the balance of the full stipulated commission as damages arising out of defendants’ discharge of plaintiff and abandonment of the enterprise.
 

 From the record presented we have come to the following conclusions:
 

 (1) The trial court erroneously received evidence concerning contemporaneous and prior agreements in respect of the time within which the building was td be completed and the maximum cost at which it was to be constructed. Plaintiff and defendants had extensive negotiations culminating in a contract which, in great detail, purported to deal with the obligations of the owner and those of the architect. This contract covered explicitly the obligations of the architect with respect to the furnishing of professional services and those of the owner in respect of paying compensation to the architect. It presumably was a final expression of the parties’ negotiations. It contained no conditions as to the time within which plans and specifications were to be completed.' It contained no limitation upon the cost of the building, but did contain a provision that “when requested to do so the architect will furnish preliminary estimates on the cost of the work, but he does not guarantee the accuracy of such estimates.” Under these circumstances parol evidence of contemporaneous or prior agreements injecting conditions upon the obligation to pay compensation to the architect are presumably inadmissible under the parol-evidence rule. It is, of course, always proper as a preliminary matter to examine the surrounding circumstances in order that the trial court may ascertain whether the writing was intended as a complete and final expression of preliminary negotiations. But this is not done by merely offering parol evidence to vary, contradict, or add to what appears upon its face to be a complete and final expression of the normal negotiations between an owner and an architect. This, is all that was done here and it was insufficient
 
 *366
 
 to show that the writing was not intended as a complete integration. To admit this evidence would nullify the whole parol-evidence rule. The relief of reformation was not asked for nor is there any basis for such relief in the record as made. The oral agreements as to time and cost limitations cannot be constructed into representations because of their promissory character. In view of this, it is unnecessary to review a great many matters argued upon the assumption that plaintiff is bound by these oral agreements.
 

 (2) An examination of the record convinces us that the evidence sustains the findings of the trial court; that plaintiff so completed the plans and specifications before abandonment of the contract as to entitle him by the terms of that contract to sixty per cent of his full commission, and that the reasonable cost of the building as estimated on the basis of partial bids is $60,000 as found by the trial court, and that this sum is the reasonable cost upon which the commission should be computed. Hence, we conclude that the trial court properly allowed plaintiff sixty per cent of his commission on an estimated cost of $60,000.
 

 (3) We are of the view that the trial court was in error in allowing plaintiff an additional forty per cent (or the balance of his commission) upon the theory that he was wrongfully prevented by plaintiff’s breach from performing the supervisory and other work by which he would normally earn that part of his commission. As we read the contract it contemplates that the owner may abandon the enterprise without committing a breach.
 

 Article 4 of the contract provides:
 

 “. . . If any work designed or specified by the architect is abandoned or suspended the architect is to be paid for the service rendered on account of it.”
 

 We think that this clause plainly means that upon abandonment the architect is entitled .to commission upon the work done by him up to the time of abandonment or suspension but
 
 *367
 
 that the abandonment or suspension is not a breach of the contract permitting him to recover damages for loss of opportunity to complete the contract. In this connection, see 6 C. J. S. p. 314, sec. 16, for cases dealing with this point.
 

 (4) The next question is whether the court could properly enter a judgment against the trustees personally. Defendants contend that the trustees signed only as representatives of the unincorporated congregation; that neither plaintiff nor the trustees contemplated that the latter would be bound individually; that they are trustees of ^.n express trust who are. excluded under sec. 260.15, Stats., from personal liability, but who may be sued simply as representing the group for whom they are trustee. Under the rule of
 
 Crawley v. American Society of Equity,
 
 153 Wis. 13, 16, 139 N. W. 734, and
 
 Vader v. Ballou,
 
 151 Wis. 577, 139 N. W. 413, members of a voluntary association are jointly and severally liable for the debts of such society regardless of the fact that members other than those sued are not made parties. It-follows that liability upon the trustees individually is established by reason of their membership, independently of their signature to the contract.
 

 ( 5) The next question is whether the mother church, which is a corporation and owns the legal title to the land, is liable upon this contract. The view of the trial court was that the proof of acquiescence to the contract by the performance of which it was likely to benefit established its liability. Plaintiff relies upon
 
 American Express Co. v. Citizens State Bank,
 
 181 Wis. 172, 183, 194 N. W. 427, where it is said:
 

 “It is so well settled that in general a corporation cannot commit the rank injustice of enriching itself by retaining the fruits of a contract and then repudiate it that it is hardly necessary to cite authorities on the subject.”
 

 We conclude that the case is inapplicable. There the corporation had executed the contract and its plea was
 
 ultra vires.
 
 Here the church corporation was not a party to the writing at
 
 *368
 
 all and the local congregation was in no sense its agent in making the contract. It is true, it was interested in having the church built, and in promoting the progress of the congregation, that it was willing to make contributions to the project, and insisted on having certain supervisory authority in the interest of economy, but all of this falls far short of making it a party to the contract. What this court said in
 
 Crawley v. American Society of Equity, supra,
 
 is applicable here:
 

 . “It would be a dangerous and unreasonable doctrine to hold national unions or lodges responsible for services rendered to subordinate local unions or lodges on the ground that such services ultimately benefit the national union or lodge. The subordinate union, for the purposes of furthering its own interests, must alone be held liable for services rendered it under an express contract by it to pay therefor, in the absence of facts or circumstances raising an implied promise to pay on the part of the superior union or lodge.”
 

 (6) The last question is based upon the fact that defendant, G. M. Pfiugradt, died before the case was called for trial and that this was called to the attention of the court; that the action was not revived against his personal representative and that the court entered judgment against the deceased personally. Sec. 269.18, Stats., reads as follows:
 

 “In case of the death of any of several plaintiffs or defendants, if part only of the cause of action or part or some of two or more distinct causes of action survives to or against the others the action may proceed without bringing in the successor to the rights or liabilities of the deceased party, and the judgment shall not affect him or his interest in the subject of the action. But when it appears proper the court may order the successor brought in.”
 

 In view of the statutory provisions, it must be held that judgment was erroneously entered as to Pfiugradt.
 

 By the Court.
 
 — Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.