ALBERT E. SLEIGHT, PLAINTIFF-APPELLANT, v. BOARD
OF EDUCATION OF PATERSON, IN THE COUNTY OF
PASSAIC, DEFENDANT-RESPONDENT.

Submitted October 27, 1933—Decided February 2, 1934.

For the plaintiff-appellant, *William B. Gourley.*

For the defendant-respondent, *Harold D. Green.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment of the Supreme Court affirming a judgment of the Passaic Common Pleas, striking out the plaintiff's complaint on the ground that it disclosed no cause of action.

The complaint alleged that on April 13th, 1916, Charles E. Sleight, and plaintiff, duly registered architects, partners, doing business under the name of Charles E. Sleight & Son, were engaged by the board of education of the city of Paterson to prepare plans and specifications for a proposed new school building in the city of Paterson; that the said partnership and the appellant, Albert E. Sleight, assignee of said partnership business and assets, rendered services to the board of education, at its request, as architects in forming and drawing plans and specifications for the proposed new public school; that for said services, defendant undertook to pay what the same were reasonably worth, and that the same were reasonably worth $11,885.22, and that defendant paid plaintiff on account the sum of $4,000, leaving a balance of $7,885.22 due.

The answer admits that Charles E. Sleight was engaged by the defendant to prepare plans as set forth in the complaint but denies that defendant had any legal authority to engage him and alleges it was acting beyond its power in so doing.

The answer set up a separate defense as follows: "Defendant will object that the complaint discloses no cause of action, as defendant was unable to enter into any contract or incur any obligation with plaintiff as alleged, as defendant has no money appropriated or authorized for such purpose."

At the trial the defendant, in accordance with said objection, moved to dismiss the complaint on the ground that it disclosed no cause of action.

The court struck out the complaint.

Upon appeal the Supreme Court affirmed the judgment of the Common Pleas Court, holding that the alleged contract was *ultra vires* the power and authority of the board of education to enter or engage in.

The Supreme Court considered the case in the light of sections 61, 74, 75 and 76 of the General School law of 1903. 4 *Comp. Stat., pp.* 4743, 4746, &c.

Section 61 of the School law provides:

"No claim or demand shall be audited or paid unless it shall be authorized by law and the rules of the board of education and be fully itemized, nor unless the amount required to pay the same shall have been theretofore appropriated by said board."

By section 74 (4 *Comp. Stat., p.* 4746) the board of education, on or before May 15th, in each year, is to prepare and deliver to each member of the board of school estimate of a city school district, an "itemized statement" of the amount of money estimated to be necessary for the current expenses of and for repairing and furnishing the public schools for the ensuing school year, and also the amount which shall have been apportioned to such district by the county superintendent.

Section 75 provides that the board of school estimate shall fix and determine the amount necessary to be appropriated for the use of the public schools for the year, and this determination in the form of a certificate is given to the board of education and to the municipal council, or board of finance, and said council or board of finance appropriates accordingly, subject to certain restrictions not here relevant.

By section 76, it is provided that whenever a city board of education shall *decide* that it is necessary to raise money for the erection of a school house, it shall *prepare* and *deliver* to each member of the board of school estimate a *statement* of the amount of money estimated to be necessary for such purpose, and said board of school estimate shall *fix* and *determine* the amount necessary for such purpose and shall certify such amount to the board of education and common

council, board of finance, or other body in the city having the power to make appropriations of money raised by tax in such city.

It then becomes the duty of the said council or finance board, &c., to raise the amount so determined by the board of school estimate.

At the argument before the Supreme Court the following stipulation was entered into between the attorneys of the respective parties and made part of the record of the cause, to wit: "That the board of education did not prepare and deliver to each member of the board of school estimate a statement of the amount of money estimated to be necessary for the purpose of paying the architect in this case nor did the board of school estimate fix and determine the amount necessary for this purpose, nor was any special appropriation made for such purpose."

The Supreme Court construed this stipulation as an admission on the part of the plaintiff that there were no funds legally available to meet the obligation under this contract, and held that it was incumbent for the plaintiff to allege in his complaint that the board of education had some appropriation or fund in hand which could be legally devoted to the payment of the architect for his services in the preparation of the plans and specifications which it is admitted he prepared at defendant's request.

We do not so interpret the stipulation, nor do we think it was necessary for the complaint to specifically allege in a case of this kind that the defendant had funds with which to pay for the services it had engaged, or to allege that the board had express authority to enter into such a contract.

Assuming that there is no *express* power conferred upon the board of education to engage the services of an architect without first obtaining an appropriation for that purpose, we think there may be an *implied* power, and a municipal corporation may be liable for services rendered to it when the contract for such is one that is within the scope of its implied power.

The appellant insists that the board of education was in-

vested with the implied power to employ an architect in this case, although the amount required for such services was not included in the statement filed with the board of school estimate.

It clearly appears by section 76 of the School law (*supra*), that the *decision* whether a new school is to be built rests primarily with the board of education. It has to decide whether such school house is needed, what size it is to be, the kind of building best suited for the purpose, &c. It then has to deliver to each member of the board of school estimate a *statement* of the *amount* of *money estimated* to be necessary for the purpose. The board of school estimate *fixes* and *determines* the amount of money necessary to build the school.

It would seem to follow then that the board of education had implied power to incur reasonable expenses for obtaining such expert information as might be necessary to furnish a basis for an accurate estimate of the cost of the proposed school building and that this justifies the engagement by the board of education of an architect and that upon the performance of his services the architect can maintain an action on the *quantum meruit* to recover reasonable compensation therefor.

There is no question raised here, as was raised in the case of *Ely* v. *Mayor of Newark,* 76 *N. J. L.* 532, cited by respondent, that the plans and specifications prepared by the appellant were not necessary or useful for the purpose for which he was engaged to prepare them.

We can see no valid reason why a board of education may not compensate an architect from its *general* funds for drawing plans and specifications for a contemplated school building where such building is not erected.

Boards of education have two principal accounts, *current* and capital. Provision is made by statute for both. Sections 74, 76 of School act, *supra*.

In *Townsend* v. *Board of Education,* 88 *N. J. L.* 97; 95 *Atl. Rep.* 729, the Supreme Court held that the certificate of a board of school estimate to the municipal board of council required by section 75 of the School act (*supra*), is a cer-

tificate of the total amount required for the pupeses specified in section 74 (*supra*), and not of the specific items to which such amount is applicable; and said total, when certified and appropriated, is at the disposal of the board of education for such application within the provisions of the act as said board chooses to make of it, in whole or part.

In the system of bookkeeping prescribed by the state board of education under statutory authority (*Pamph. L.* 1911, *p.* 506), the state board of education draws a marked distinction between the plans and specifications for an estimate of a proposed school building which is *not* constructed, and the plans and specifications where a building is constructed, so far as relates to the payment of the architect.

In the first case the state board directs the city board of education to pay the architect out of *current* expenses (that is "general" fund) and in the second case he is to be paid out of the fund appropriated for such building (that is, "capital" fund) which then includes a sum for his services.

We think this is a wise policy and though, as respondent argues, these rules were adopted subsequent to the engagement of plaintiff and as to him do not have the force of law, yet they clearly indicate a sound principle.

It was alleged in the complaint and admitted in the answer that the board of education paid appellant $4,000 on account of his services. In view of the stipulation hereinbefore cited, this could have come from no other source than the general funds of the board of education. The presumption is that the board acted within the scope of its authority and the payment of this money on account would, therefore, indicate that there were moneys available to pay for architect's services.

The burden of proof was on the defendant to show that there were no funds available from any source to pay the architect—if such fact affected the cause. *Ringleben* v. *City of Long Branch,* 11 *N. J. Mis. R.* 391; 166 *Atl. Rep.* 470 (not officially reported).

The trial court, however, in the instant case, by striking out the complaint assumed that the allegations contained in the separate defense of the answer were true, and thereby relieved

the defendant of the burden of showing that there were no available funds from which appellant could be paid, and likewise deprived appellant of the opportunity of showing that there were such funds.

This, we think, was error.

Under point one of its brief, respondent questions the sufficiency of the appellant's ground of appeal.

Technically the ground of appeal set forth may not be all that might be desired but we are not prepared to say that it is insufficient. Moreover we find no record of any motion to dismiss the appeal.

The construction of the school law is here involved, raising a question of state-wide public interest, which should be disposed of on the merits rather than on technical niceties in pleading.

Respondent further argues that the complaint should have been stricken because it did not contain an allegation that the plans and specifications were submitted to and approved by the state board of education as required by section 129; and also because it failed to allege that the appellant had exhausted his remedies pursuant to the provision of section 10 of the school law, which requires all controversies or disputes that shall arise under the school laws to be decided by the commissioner of education subject to appeal to the state board of education.

None of these are embraced in the objection to the complaint reserved in the separate answer filed and for that reason were not considered by the Supreme Court, and we shall not discuss them here, except to say we find no merit in any of them.

We are of the opinion, therefore, that the judgment of the Supreme Court affirming the judgment of the Common Pleas Court striking out the complaint, should be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CASE, DONGES, HEHER, PERSKIE, KAYS, HETFIELD, DEAR, WELLS, JJ. 11.