MARY ROWLAND AND THE TRUST COMPANY OF NEW JERSEY, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF JOHN T. ROWLAND, DECEASED, PLAINTIFFS-RESPONDENTS, v. COUNTY OF HUDSON, A CORPORATE BODY POLITIC, DEFENDANT-APPELLANT.

Argued April 2 and April 9, 1951—Decided April 30, 1951.

*Mr. William H. Speer* argued the cause for respondents. *Mr. Robert Carey* and *Mr. Herbert Ziff* on the brief. (*Messrs. Carey, Pforr, Kneoppel & Ziff,* attorneys).

*Mr. Frederick J. Gassert* argued the cause for the appellant. (*Mr. Daniel T. O'Regan,* attorney).

The opinion of the court was delivered by

CASE, J. The appeal, certified to us on our own motion, is from a judgment in favor of the plaintiffs and against the defendant for services rendered by John T. Rowland, a duly licensed and registered architect, in his lifetime, in drawing uncompleted plans and specifications for a county hospital which was never erected. The complaint contained two counts, of which one was for the reasonable value of services rendered; and the case went to the jury on that proposition.

The legality of the appointment and the right of the decedent or of his estate to compensation for the services rendered are not disputed. The employment was under a resolution of the board of chosen freeholders adopted April 11, 1938, which provided as follows:

"RESOLVED, that John T. Rowland, be and he is hereby appointed Architect-in-Charge for all building work including all furniture and equipment work at the Hudson County Hospital for Mental Diseases, Secaucus, N. J., effective immediately and that compensation be and hereby is fixed at six per centum (6%) of the cost of such work, and be it

FURTHER RESOLVED, that said John T. Rowland be and he is hereby notified to proceed with drawings and specifications for all building work including all furniture and equipment work at said hospital and report the same to this Board for its approval and advertising for bids, and be it FURTHER RESOLVED, that George O'Hanlon, M. D., be and he is hereby appointed Medical Consultant in connection with the preparation of the drawings and specifications for all building work including all furniture and equipment work at said hospital."

Interim payments were made to Mr. Rowland in the aggregate and substantial sum of $165,000. The bills upon which those payments were made were rendered "on account of services," with dates and amounts as follows: April 6,

1943, $42,500; October 21, 1943, $42,500; March 6, 1944, $20,000; June 5, 1944, $20,000; September 12, 1944, $20,000; and December 20, 1944, $20,000. The bills were accompanied by explanatory letters to the board and by certain of the plans and blue prints. So late as December 26, 1944—this in conjunction with the bill of December, 1944—Rowland wrote to the board stating that the final drawings for one of the buildings were advancing toward completion and forwarding some blue prints. Payment of the last of these interim billings was made two days after Rowland's death. Dr. O'Hanlon, appointed by the board in 1938 as medical consultant in the preparation of the drawings and specifications, was also Medical Director of the Jersey City Medical Center and hospitals and institutions of Hudson County. He consulted, either directly or through his assistant, with Mr. Rowland or the latter's representative, and testified that he had never received notice to discontinue; but what he did and what Rowland did, independently or together, were subject to approval by the board. The work of drawing the plans and specifications was begun forthwith upon Rowland's appointment in April, 1938, and continued with decreasing tempo until his death on January 22, 1945. On April 26, 1945, the board adopted a resolution as follows:

"WHEREAS, John T. Rowland, Architect-in-Charge, for preparation of certain plans for county buildings, died on January 22nd, 1945; therefore be it

RESOLVED, that the Executors of the Estate of John T. Rowland, Architect, be and they are hereby directed to suspend activities upon any work upon which the said John T. Rowland was engaged for the County of Hudson, and to transmit to this Board all plans, specifications, property and other data in their present stage of completion."

The action was brought to recover the additional sum of $92,253, representing the balance claimed by the estate to be due Mr. Rowland for the services he had rendered, and resulted in a judgment for $75,000 with interest.

The position taken by the defendant at the trial was, and is here, that Mr. Rowland was entitled to receive reasonable

compensation for the work that he performed; that an action in *quantum meruit* is appropriate if the sum so earned exceeds the amount paid; and that the point of difference is over the method of proving reasonable value of the services rendered. The County of Hudson presents but one point, as follows: Time, labor and expenditures are the only proper evidence of reasonable value in a case of this nature; (a) there was no "cost of construction" to which plaintiffs' formula can be applied; (b) with no "cost of construction" only proof of time and effort expended is admissible as evidence of reasonable value; (c) the admission of evidence of construction costs and the charge to the jury in regard thereto was error. The defendant made no objection, and took no exception, to any matter in the charge related to the present dispute. The issue is whether the trial court erred in admitting proof of what the probable cost of the buildings would have been had the plans and specifications been completed and the buildings been constructed in accordance therewith.

The termination of the contract was coincident with and caused by Rowland's death, subject to some services by his office during a brief period following the death said to have been rendered by Rowland's office on request of representatives of the board, ending with the resolution of April 26, 1945, which services went to the jury on the question of ratification. *Cf. De Muro v. Martini*, 1 *N. J.* 516 (1949).

It is well established that if a member of a skilled profession, under contract for the performance of professional services, dies after part performance but before complete performance his estate is ordinarily entitled to recover the full reasonable value of the services rendered, not exceeding, however, the sum or rate fixed by the contract. That doctrine frequently extends to any termination of the contract brought about without the fault of either party. *Cf. Stein v. Shaw*, 6 *N. J.* 525 (1951).

The plans and specifications were not complete. Plaintiffs' proof was that those for one building were 90 per centum complete and for the second building 50 per centum. The

theory upon which plaintiffs prevailed was: The cubical content of the proposed buildings constituted the basis of the calculation. That figure was multiplied by the estimated cost per cubic foot. Four per centum of that result was next calculated upon the assumption, supported by proof, that six per centum of construction costs is a reasonable charge for the drawing of plans and specifications and supervision of construction and that where that is the over-all charge four per centum is a proper amount to be allocated where the work of supervision is not rendered. Finally, a percentage of that total was taken to correspond with the degree of completion of the plans and specifications. The attack upon that formula is that the proof of estimated costs was improperly admitted. Without the proof as to estimated costs the chain of testimony was insufficient to sustain a verdict.

It was in proof that there was an accepted practice for the fixing of fees for and among architects in the State of New Jersey whereby architects were paid on a percentage basis for new building construction of the type here involved, six per centum (which corresponds with the contract provision) of the cost for complete plans, specifications and supervision, four per centum if there was no supervision; that four per centum of the estimated cost would be a reasonable charge for the work done on the basis of completed plans, but that the charge here should be a percentage of four per centum based on the percentage of completion. There was further proof that the cost of construction ran from about 68 cents per cubic foot in 1938, when the contract was made, through 85 cents and 95 cents to about $1.00 per cubic foot in 1943, and $1.00 or more in 1945.

We proceed to discuss the cases cited by defendant in support of its point. *Ely v. Newark,* 76 *N. J. L.* 532 (*E. & A.* 1908), and *Fletcher v. Board of Education,* 85 *N. J. L.* 1 (*Sup. Ct.* 1913), go upon the proposition that the contracts sued upon were *ultra vires* the body which made them. *Stephen v. Camden & Philadelphia Soap Co.,* 75 *N. J. L.* 648 (*E. & A.* 1907), is not in point. *Klemmt v. Yeskel,* 102 *N. J. L.*

418 (*E. & A.* 1925), runs to the effect that the architect could sue for the reasonable value of services rendered where the building was not erected and that *conclusive* effect was not to be given a letter alleged by the owner to contain the contract regarding rates. *Osterling v. Allegheny County,* 272 *Pa.* 458, 116 *A.* 385 (*Penn. Sup. Ct.* 1922), passed upon a contract which subdivided the total fees into certain parts based upon the entire costs, namely, one per centum when the final preliminary study was adopted, two per centum when the working drawings and specifications were completed and adopted, &c.; that the architects had prepared an original estimate of the cost to enable the county to determine whether it would proceed; that the stage at which the three per centum for which plaintiff sued became payable indicated that the cost so referred to was the mentioned architects' estimate, and the court so held. In *Horgan and Slattery v. City of New York,* 114 *App. Div.* 555, 100 *N. Y. Supp.* 68 (*App. Div.* 1st *Dept. N. Y. Sup. Ct.* 1906), plaintiff, a corporation engaged in architectural services, sued on two counts, one on the contract and the other for breach of the contract, and was denied recovery upon the ground that it had not brought itself within the requirements of the contract. The opinion suggests, *obiter,* that recovery might be had upon a *quantum meruit* for the actual value of the services in fact performed, but not a percentage of the cost of erection or of the proposed cost of erection. Likewise in *Bernstein v. City of New York,* 143 *App. Div.* 543, 127 *N. Y. Supp.* 987 (*App. Div.* 2nd *Dept.* 1911), the gist of the holding is that the architect could not recover because he had failed to perform in accordance with the contract. In *Higgins v. Piel,* 208 *App. Div.* 729, 202 *N. Y. Supp.* 874 (*App. Div.* 2nd *Dept.* 1928), it was briefly determined that the judgment below so far as appealed from was affirmed on the opinion of the official referee. The opinion of the referee is printed, but the issues of the appeal do not appear. Nevertheless it is said: "What the plaintiff's right would be, if defendant should build on plaintiff's plans, need not be determined in this action. Some-

thing that may never be, and something that the defendant may lawfully prevent from ever being, is as unsubstantial as a vision." In *Wetzel v. Roberts*, 296 *Mich.* 114, 295 *N. W.* 580 (*Sup. Ct.* 1941), an architect sued upon a contract as well as upon the common counts to recover for services performed in the drawing of plans and specifications for construction work that was never done. The services were performed with knowledge that the cost of the improvements was not to exceed $15,000. A bid on the plans so prepared amounted to $28,000, an amount so much greater than that which the owner had planned upon and so much in excess of the limitation which had been communicated to the architect that the owner refused to proceed. Plaintiff sued for a fee based on the bid of $28,000; held, upon the facts of the case plaintiff could not recover. The contract provision was that the architect's fees were to be based upon a percentage, to be computed upon the cost of the work, and the cost of the work was to be based on the amount specified in the executed construction contract. The opinion observes:

"There is nothing in the terms of the contract which provides that the total fee of the architect would be 10 per cent of the amount of a bid. The fee depends upon the letting of a contract. The architectural fees were based upon the total amount that it would cost to do the work, according to the terms of the construction contract. * * * To sustain the claim of plaintiff it would be necessary to hold that no matter how large the bid for doing the work, Roberts would have been obligated to pay an architectural fee based upon the amount of such a bid. The contract does not so provide, and Roberts did not so agree."

*Loyal Order of Moose v. Faulhaber*, 327 *Mich.* 244, 41 *N. W.* 2d 535 (*Sup. Ct.* 1950), was a suit in equity wherein plaintiff sought to set aside a mechanic's lien filed by the defendant architect for services rendered. Bids for the work were in the amounts of $35,000 and $29,414 respectively, and neither was accepted. Such work as the plaintiff did was at the cost of $6,800. It is to be gathered that the defendant rested strictly on his contract inasmuch as the opinion states that he did "not rely on any claim of a right of recovery

for the reasonable value of the work actually done by him in plaintiff's behalf" and did not claim recovery for a breach. The opinion further states that the trial judge "sought to determine the controversy in such manner as to protect the legal rights of the parties and to bring about an equitable result" and allowed the architect ten per centum of the actual construction costs. That disposition was affirmed. The opinion contains this language:

"If defendant (the architect) is correct in his claim as to the interpretation of his agreement with the plaintiff, the conclusion would necessarily follow that he would be entitled to a fee based either on estimated cost of the improvement under plans and specifications prepared by him, or on the basis of the lowest *bona fide* bid received for the doing of the work contemplated thereby, without reference to the amount of the estimate, or the bid, or the letting of any contract. It may not be assumed that the parties intended such a possible result. Doubtless they thought at the time the agreement was made, all parties acting in good faith, that a contract might be made with a responsible contractor under which the improvement would be accomplished. In such event defendant's fee was to be based on the cost of the work to the plaintiff. The agreement may not be construed as meaning that the defendant was to receive his fee regardless of whether any work was done in the remodeling of plaintiff's building."

We believe that none of the cases so cited holds upon our issue. The facts, the pleadings and the nature of the litigation vary. The validity of the employment in the present case is conceded, as is the right of recovery if the value of services in excess of the amounts paid be properly proved. There was not a specific limitation upon prospective costs by which the architect was on notice of an amount not to be exceeded. It is true that the county, on July 1, 1938, made an unsuccessful effort to induce the Federal Emergency Administration of Public Works (the P. W. A.) to finance the project and in the application, vouchered by Rowland, represented that the project would cost $6,400,000—a cost estimate that appellant is willing to accept. However, that was an abortive step which was not controlling upon the architect in his continued efforts to produce a result desired

by the board. But while the decided points do not, in our understanding, reach the present controversy, nevertheless the drift of expression in several of the opinions is adverse to the logic of admitting the disputed proof.

We pass to the cases cited in support of the judgment. In *Singer v. Parker,* 166 *A.* 325 (*Sup. Ct.* 1933, not officially reported), the evidence of reasonable value came into the case without objection. *Kitchell v. Crossley,* 90 *N. J. L.* 574 (*E. & A.* 1917), held that the recovery by the plaintiff architect properly depended upon a contract fixing precise figures and reversed the judgment based on reasonable value. *Kehoe v. Rutherford,* 56 *N. J. L.* 23 (*Sup. Ct.* 1893), held that a contractor, having partly performed under a contract for a complete job at *a specified price,* may sue the *defaulting defendant,* for damages caused by its breach, and recover, for the work done, such a proportion of the entire contract price as the fair cost of that work bears to the fair cost of the whole work, and in respect of the work not done, such profit, if any, as he would have made by doing it for the unpaid balance of the contract price; and *Wilson v. Borden,* 68 *N. J. L.* 627 (*E. & A.* 1902), is an application of the doctrine so stated. Neither case reaches the present issue.

*Kent v. Darman,* 137 *A.* 467 (*Sup. Ct. Rhode Island* 1927), was a suit by an architect for services in drawing plans and specifications for the erection of a building which the owner finally concluded not to build because of the high costs. The court, in sustaining verdict for the plaintiff, said:

"With doctors, lawyers, and other professional men, the element of time is but one of the considerations in fixing the amount of reasonable compensation. Inability to give the exact amount of time expended may be considered by the jury, but does not prevent recovery for the fair value of services which the evidence shows have been performed. Plaintiff and two other architects called by him as expert witnesses, in giving their opinions as to the reasonable value of plaintiff's services, base their estimates in part on the standard for charges made by the American Institute of Architects. This association is a voluntary organization of many leading architects of the United States. The Institute, it appears, had published the statement, which was generally accepted by its members and

other architects, that a fair minimum charge for the preparation of plans and supervision of erection of the building was 6 per cent. of the cost price, and if the building was not erected, three-fifths of 6 per cent. This rule is not binding even upon the members of the association, but it appears that it is a basis which is generally accepted by architects of good standing throughout the United States. In giving their estimates the expert witnesses stated that they regarded this as one of the elements to be considered in deciding on the amount to be charged in any case. We see no reason why this is not a proper consideration. It is not claimed that defendant, who knew nothing of this custom, was bound thereby, but in arriving at the value of professional services evidence of the customary charge made by members of a profession or occupation in the vicinity where the contract is made is a proper element to be considered in the fixing of the charge. *Best v. McAuslan,* 27 *R. I.* 107, 60 *A.* 774. Certainly if the charge was greater than was usual such fact could be shown by defendant in defense of the claim made. The amount of the verdict shows that the jury exercised its independent judgment as to the value of the services and did not adopt the scale of prices of the Institute."

That decision, cited to us by respondents, appears, on its face, to approve of basing fair value upon a percentage of the cost of an unerected building, but no such proof appears to have been produced beyond the showing that the owner had probably received bids in undisclosed amounts beyond his desire to expend. However, the architect's plans and specifications in that case were completed and had the owner's approval to the extent that bids for construction were solicited; the owner was a private individual with no intermediate brakes upon his capacity to proceed; and the point of decision was the sufficiency of the proofs and not a ruling upon the admission of evidence. In the instant case the plans, taken as a whole, were far from complete. Even upon completion of the plans it would have been necessary, before actually building, for the board—presumably not with the same membership as at the time of the appointment—to approve the plans, finance the project, call for bids and award the construction contract, all subject to state and local restrictions.

In *Lambert v. Sanford,* 12 *A.* 519 (*Sup. Ct. Conn.* 1887), the plaintiff architect sued on a complaint which alleged that the work had been done "at an agreed compensation of two

and one-half per cent. upon the *estimated* cost of the buildings." Judgment by default was entered, and the matter went to hearing on the question of damages only; and since the contract was for compensation on the estimated cost, and that had been adjudicated, proof of estimated cost was admitted. Estimates and bids made by builders which plaintiff had obtained for the defendant in pursuance of the contract were offered in evidence and were admitted over the objections (1) that the defendant had not accepted the bids and (2) that the "estimate" referred to in the contract must be an "agreed" estimate. The admission was sustained on a strict ruling that those particular objections were not well taken. *Wentink v. Freeholders of Passaic*, 66 *N. J. L.* 65 (*Sup. Ct.* 1901), *Hargrave v. Conroy*, 19 *N. J. Eq.* 281 (*Ch.* 1868), and *City of Chicago v. Tilley*, 103 *U. S.* 146, 26 *L. Ed.* 371 (1881), do not, we think, fit the facts of this case.

Seven years after the appointment the plans had not reached the stage at which the resolution of appointment, by its terms, anticipated a payment would be made, a period of great increase in building costs. Much of the architect's work was done at the beginning when construction costs were lower and payments for Rowland's services aggregating $85,-000 on account were paid in 1943; yet plaintiffs' theory of recovery calls for a calculation of the entire earnings on the basis of the higher rates. The assumption that the plans would sometime have been completed to the satisfaction of the board and that the award for construction would sometime have been made and construction actually had is built upon doubt and uncertainties. Added to the other factual fog is the uncertainty as to what the plans, now only partly completed, would have called for in their final form. They would have been subject to revision, perhaps radical revision, at the demand of the client. Indeed, all of the plans, since none had been finally approved, were subject to the same potentiality involving additional service, and it may be much additional service, by the architect. All of this is in the realm of what the New York Court of Appeals in *Sargent v.*

*McLeod,* 209 *N. Y.* 360, 103 *N. E.* 164 (1913), calls the "unknowable." In fact, the board, after Mr. Rowland's death, embarked upon a much simpler and less costly improvement under plans prepared by another architect.

■■ Plaintiffs may not be limited, as defendant claims they should be, to proof of the number of Rowland's employees who worked on the project, their salaries, the amount of time they spent in the work, the amount and cost of the materials used and the value of the actual time Rowland himself devoted to the project based upon his reputation in the architectural profession. Members of skilled and learned professions, as was said in *Kent v. Darman, supra,* are not limited in the determining of reasonable compensation to the exact amount of time devoted to a project. There are other ways of proving the reasonable value of services. But we think that under the circumstances of this case, where an architect dies many years after his employment by a public body, leaving his work far short of completion, his personal representatives may not make their case by proving estimated costs. They are entitled to recover the reasonable value of the services rendered, due credit being given for payments already made, but they may not base their recovery on the estimated costs of construction never had and never determined upon, under incomplete plans never approved. That character of proof is quite too speculative.

The judgment below will be reversed and the record remanded for a new trial.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For affirmance*—Justices HEHER and WACHENFELD—2.