27 N.J. Super. 411 (1953)
99 A.2d 445
JOHN J. GIBLIN, PLAINTIFF,
v.
THE CHARTER COMMISSION OF THE CITY OF NEWARK, ALAN V. LOWENSTEIN, RAYMOND DelTUFO, JR., JAMES T. CALLAGHAN AND RUTH C. LYNN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 29, 1953.
*412 Messrs. Parsonnet, Weitzman & Oransky, attorneys for plaintiff (Mr. Thomas L. Parsonnet appearing).
Mr. Alan V. Lowenstein, attorney for defendants.
COLIE, J.S.C.
This proceeding in lieu of prerogative writ comes before the court on the return day of an order to show cause why the defendants "should not be required to reprint, republish and redeliver to the City Clerk of Newark, the report of the Charter Commission of the City of Newark in such manner as will incorporate therein, in full, the minority report of the plaintiff as a member of the Charter Commission." The defendants moved to dismiss *413 the complaint and for judgment in their favor on the ground that there was no genuine issue of any material facts and that defendants are entitled to judgment as a matter of law and that: (1) the commission has the statutory responsibility of determining the form and character of its final report; (2) there can be only one report of the commission under the statute; (3) if a member of the commission dissents from the commission's report, there can be no minority report in the absence of a minority vote and that plaintiff requested that he be recorded as not voting; (4) that plaintiff was given full opportunity to include in the final report his views on the election of councilmen by wards and at large, in his own words or in words approved by him, and having declined to do so is now barred from relief in this action; (5) the reprinting and republication of the report would be a waste of the city's funds and unnecessary since approximately 3,000 copies of the report have been widely distributed and plaintiff's views have been given abundant publicity.
The following are the facts:
As the result of a referendum provided for in L. 1950, c. 210; N.J.S.A. 40:69A-1 et seq., commonly known as the Faulkner Act, the charter commission, made up of plaintiff and the individual defendants, was created. On August 8, 1953 the commission unanimously voted to submit to the citizens of Newark recommendations favoring one of the optional mayor-council plans to be voted upon at a referendum on November 3, 1953. The preliminary report left open questions as to (1) number of councilmen, (2) election of councilmen at large or some at large, others from wards, (3) concurrent or overlapping terms, and (4) elections on a partisan or non-partisan basis. A public hearing was held August 13, 1953. Thereafter, and following meetings of the commission, it became apparent that the individual defendants favored Plan C (N.J.S.A. 40:69A-55, et seq.), with nine councilmen to be elected for concurrent four-year terms on a non-partisan basis, five to be from newly created wards and four from the city at large. The *414 plaintiff favored election of all councilmen at large on a non-partisan basis. At the commission meeting on August 31, 1953, the final report was approved by a vote of 4 to 0, the plaintiff abstaining. The minutes of the meeting disclose that a printed proof of the commission's report was before each commissioner. The plaintiff presented to his fellow commissioners a copy of a document entitled "Minority Report of John J. Giblin, Member of Charter Commission of Newark, N.J.," and asked that it be inserted in the final report after the section of chapter IV, entitled "Election by wards and at Large." This the commission, after discussion, declined to do. It was further suggested that a summary of plaintiff's views, written or approved by him, be incorporated in the final report at an appropriate place left blank for that purpose. This offer was refused and plaintiff's "Minority Report" was not included in the final report.
The duties of the charter commission are to study the form of government of the municipality; to compare it with other available forms under the laws of this State; to determine whether or not in its judgment the government of the municipality could be strengthened, made more clearly responsive or accountable to the people or whether its operation could be more economical or efficient, under a changed form of government (section 7); to hold public hearings and generally provide for the widest possible public information and discussion respecting the purposes and progress of its work (section 9) and "report its findings and recommendations to the citizens of the municipality * * * publish or cause to be published sufficient copies of its report for public study and information and shall deliver to the municipal clerk sufficient copies of the report to supply it to any interested citizen upon request. If the charter commission shall recommend the adoption of any of the optional plans of government as authorized in section 1-12 (a) or 1-13, the report shall contain the complete plan as recommended." (Section 10). Section 5 provides that "A majority of the members of said commission shall constitute a quorum for the transaction of business but no recommendation of said *415 commission shall have any legal effect pursuant to sections 1-15 and 1-16 of this act unless adopted by a majority of the whole number of the members of the commission."
The defendants argue that the use of the third person pronoun throughout section 10 indicates that the commission as an entity shall file a report and that the statute prescribes no responsibilities for individual commissioners as such. They also contend that minority members share with majority members the right to express themselves in the deliberations of the committee and to have their votes recorded on questions with which they may be confronted. In this case the plaintiff abstained from voting and the report was approved by a vote of 4 to 0. An interesting question is presented as to the right of a member of a commission such as this to file a dissent where he has failed to cast his vote either for or against the findings and recommendations of a majority of that commission. It is, however, unnecessary to pass upon that question for reasons that will appear hereafter.
The proposed minority report of Commissioner Giblin consists of two typewritten pages, running to about 825 words, of which 265 do not deal with the point of whether councilmen shall be elected at large or in whole or in part by wards. The gist of his objections are that the election of five councilmen by wards and four from the city at large would revive the evils of petty ward politics abolished in 1917 by the citizens of Newark and that the quality of councilmen elected on a ward basis would be inferior to that of councilmen elected at large.
The final report, chapter IV, subdivision 2, page 54, entitled "election by wards and at large" devotes more than four printed pages to the precise points contained in Commissioner Giblin's proposed minority report. The arguments for the election of all councilmen at large is fairly and adequately presented.
The plaintiff relies heavily upon Citizens to Protect Public Funds v. Board of Education of Parsippany-Troy Hills, 13 N.J. 172, 98 A.2d 673 (1953). That case can readily be distinguished since it dealt with the right of a public agency *416 to use public funds to influence the voters at a referendum. The court said, in that case:
"* * * the board made use of public funds to advocate one side only of the controversial question without affording the dissenters the opportunity by means of that financed medium to present their side, and thus imperilled the propriety of the entire expenditure. The public funds entrusted to the board belong equally to the proponents and opponents of the proposition, and the use of the funds to finance not the presentation of facts merely but also arguments to persuade voters that only one side has merit, gives the dissenters just cause for complaint."
Implicit in the holding in the Parsippany-Troy Hills case is the thought that the brochure there involved should have presented a fair statement of the views pro and con. So in this case there is involved a question of great public importance that calls for a statement of the views of a member of the commission whose views differ from that of the majority, if he made a reasonable request therefor. One cannot read that part of the report dealing with election of councilmen by wards or at large without coming to the conclusion that the very views, although not the language, of Commissioner Giblin are fairly set forth. It is said that a denial of plaintiff's asserted right is out of line with the democratic process. No on has expressed more succinctly the essence of the democratic process than the late John Buchan (Lord Tweedsmuir), Governor General of Canada. He said:
"Democracy [is] primarily an attitude of mind, a spiritual testament, and not an economic structure or a political machine. The testament involve[s] certain basis beliefs  that the personality is sacrosanct, which [is] the meaning of liberty; that policy shall be settled by free discussion; that normally a minority should be ready to yield to a majority, which in turn should respect a minority's sacred things."
One cannot read the final report without coming to the conclusion that the views of the plaintiff are fairly set forth and that the majority of the commission has acted fairly and fully and with due respect for the minority.
The order to show cause is discharged and the motion for judgment of dismissal of the complaint is granted.