47 N.J. Super. 70 (1957)
135 A.2d 329
WALTER B. HANKIN, NED R. STULL AND THOMAS M. BACKES, PARTNERS, t/a HANKIN, STULL & BACKES, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF EDUCATION OF HAMILTON TOWNSHIP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1957.
Decided October 14, 1957.
*72 Before Judges GOLDMANN, FREUND and CONFORD.
*73 Mr. William Henry Lawton argued the cause for defendant-appellant.
Mr. James A. Waldron argued the cause for plaintiffs-respondents (Messrs. Backes & Backes, attorneys; Mr. Robert M. Backes, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
The question for determination presented on this appeal is whether the amount awarded by the trial court, sitting without a jury, as compensation under quantum meruit, to the plaintiffs as architects for the preparation of plans, specifications and estimated costs of construction of certain school additions and a proposed new high school for the defendant board of education, was reasonable. Defendant's main contentions on this appeal are that the amount claimed is unreasonable in that it includes compensation for services which were unnecessary under the circumstances, and hence ultra vires and not within the power of the board of education to contract for, and that it is based upon a fixed percentage of estimated costs of buildings which were never completed. Defendant also urges several other points relating to the inadmissibility of evidence and the allowance of interest.
Primarily, the defendant contends that the award for any services performed after June 30, 1955 was erroneous. To evaluate the merits of this contention a chronology of the pertinent facts is necessary.
Plaintiffs, by resolution, were appointed architects for the defendant board of education on April 23, 1954. In September 1954 they were directed to prepare preliminary sketches for the construction of two elementary schools (Sayen and Steinert Schools). Subsequently, the voters of the township approved the expenditures as estimated to cover the preliminary plans, and plaintiffs were directed by resolution to proceed with the drawings for these two schools. By letter of January 3, 1955, approved by the board, the plaintiffs agreed on the compensation to be paid them for new *74 work at "6% of the total work contracted for in the building upon which the architectural service has been rendered." Payment was to be made in the following manner: "1 1/2% of an arbitrarily agreed upon amount" when preliminary sketches had been approved by the board of education and submitted to the State Inspector of School Buildings and 4 1/2% of the contracted cost of the buildings to be paid upon the signing of construction contracts. The mentioned 4 1/2% included the 1 1/2% first mentioned, so that the remaining 1 1/2% was to be paid as construction progressed until completion.
It is evident that the "arbitrarily agreed upon amount" was the estimated construction cost of the two buildings. The letter further stated that the agreement was for architectural services "upon new school construction within your Township."
In February 1955 defendant paid the plaintiffs the 1 1/2% of the estimated costs, and in May 1955 the remainder of the 4 1/2% for their work on the Sayen and Steinert Schools. The instant action is not to recover payment for work performed on these two projects.
Pursuant to three resolutions adopted on May 11, 1955, plaintiffs were "instructed to draw plans and specifications" for additions to the Yardville Heights and Kisthardt Schools and "to prepare sketches and an estimated cost for the construction of a 1500 student capacity Senior High School." In March 1955, prior to the formal resolutions of May 11, 1955, plaintiffs had commenced the architectural work on the three projects. There was no resolution or letter or agreement as to the fees to be paid for services on these three projects.
The contemplated cost for the three projects would exceed the defendant's bonding limitations, so it was necessary to submit the plans and specifications to the State Commissioner of Education and the Local Government Board for approval prior to submission of the project to the voters. N.J.S.A. 18:5-86. The preliminary plans, cost estimates and reports were approved by the board of education on June 29, 1955, *75 for presentation to the State Commissioner of Education and the Local Government Board. At the request of the defendant, the State Commissioner of Education held a meeting on June 30, 1955 for the purpose of hearing the arguments concerning the need of additional school facilities, the plans and cost estimates. A voice recording was made of the meeting, at which it was stated that all those present, including members of the board of education, were in accord with the proposed school plans. Certain refinements of the plans and building arrangements were suggested and a supplemental report of a projected educational program was requested. Both state agencies approved the plans, although final endorsements were not given until September 7, 1955 and October 27, 1955, respectively.
Subsequent to the meeting of June 30, 1955, plaintiffs continued working on the projects, revising the original plans, assisted in preparing a supplemental educational report by the superintendent of schools, attended hearings before the Local Government Board, and prepared schematic sketches, posters and models which were used by the defendant, its members and a citizens advisory committee in presenting the plan to the voters.
The referendum which proposed the construction of additional school facilities at a total cost of $3,800,000 was rejected by the voters on November 15, 1955.
The plaintiffs presented their bill for services in the sum of $46,875, predicated upon 1 1/2% of the estimated building cost of the three projects, which defendant refused to pay. The present action was brought in quantum meruit to recover the reasonable value of plaintiffs' services. The trial court, without a jury, after a review of the proofs entered judgment in favor of the plaintiffs for $46,000, with interest from December 2, 1955, the date of defendant's first refusal to pay the bill rendered.
Plaintiffs claim that they had no intention of rendering their services on a contingent basis, that all of their services were necessary to establish an accurate estimate of the costs so that an informed presentation of the three projects *76 could be presented to the voters, and that the defendant board not only authorized the services but it used and continues to use the plaintiffs' work. There is no denial by the defendant that plaintiffs are entitled to some remuneration for their services, but it contends that most of the rendered services went beyond the request of the defendant, and that "after June 30, 1955, plaintiffs elected either to gamble or to be presumptuous by substituting their hope for the ballot box." It is further contended that if the additional services were rendered, such requests were ultra vires the power of defendant since no further services were necessary and so could not be implied as being within the defendant's authority.
The testimony discloses that architectural services for institutional buildings are generally divided into three categories: (1) preliminary services where the scheme or concept is established; (2) preparation of the detailed working drawings for the construction of the building; and (3) supervision of the construction. In detailed explanation of the three phases of such services there was received in evidence a circular of information on architectural services and fees of the New Jersey Chapter of American Institute of Architects, stating in detail the services to be rendered in each of the three steps: preliminary, contract document and supervising services. The exhibit states that preliminary services include: conference with the owner, study of the site and investigation of governmental restrictions and conferences with relevant agencies, studies at small scale showing arrangement and design sufficient to establish the scope of the work and to arrive at preliminary estimates, and revision of drawings and modifications until they meet requirements, outline of specifications as to type of construction, materials and structural and mechanical features, and lastly estimate to indicate the approximate cost.
Robert W. Cutler, partner of a well-known New York architectural firm and president of a chapter of the New York Institute of Architects, whose testimony clearly indicates extensive experience with respect to architectural *77 services, particularly for institutions and schools, and fees to be charged in matters similar to the one here under consideration, testified that all the work performed by the plaintiffs was within the purview of "preliminary services." He further testified that plaintiffs had "complied with all the steps outlined in this preliminary service," and he stated that it is customary for architects to develop and research as was done by the plaintiffs. Additionally, he testified that the preliminary work performed by the plaintiffs was "excellent, way above average."
The defendant contends that the only authorization given to the plaintiffs was to prepare rough sketches showing the proposed construction so as to enable the board to arrive at an estimated cost, in order to obtain the required approval from state agencies. However, the testimony of the superintendent of schools and of the president of the defendant board, at the time with which we are concerned, discloses that all the work done by the plaintiffs was within the authority granted by the board, with its approval, and that it was understood that plaintiffs were to be compensated for their services. Defendant, however, contends that the services, even if authorized, were ultra vires, and hence there can be no quantum meruit.
The "additional" services performed by the plaintiffs after June 30, 1955 were primarily revision of the original plans and preparation of scale models, posters, contour maps and aerial photographs for presentation of the entire plan to the voters. Also, there were further conferences with the Local Government Board and submission of the revised plans and models to the defendant board. These models and maps were admittedly used primarily to inform the voters at public forums of the board's plans for the proposed construction, although they were also utilized to inform the board, and as aids to the architects. The testimony discloses that the revised plans apparently were made at the suggestion of the Director of School Building Services of the State Board of Education to make them more adaptable to the program.
*78 The Director of School Building Services testified that at the meeting of June 30, 1955 instructions were given for the defendant to work with the architects and the county superintendent of schools in making revisions. The superintendent of schools testified that as a result of the educational report made after June 30, 1955, the architects were required to prepare a revision of the plans to increase the capacity of the high school from 1,500 to 1,600 students. Although it is not clear, it would seem that the architects presented their revisions on August 1, 1955, but apparently no change was made in the estimated cost.
From the testimony we conclude that work performed by the plaintiffs subsequent to June 30, 1955, while not necessary to secure the approval of the state agencies, nor to ascertain estimated costs (as the revision did not alter cost estimates), was certainly within the purview of "preliminary services" as testified to and described by the exhibit of the American Institute of Architects. Kent v. Darman, 137 A. 467 (R.I. Sup. Ct. 1927).
This testimony does not render the services ultra vires the defendant board, as it concedes having the implied authority to incur reasonable expenses for obtaining such expert opinion as was necessary to furnish a basis for an accurate estimate of the cost of the projects. Sleight v. Board of Education of Paterson, 112 N.J.L. 422 (E. & A. 1933); Citizens To Protect Public Funds v. Board of Education of Township of Parsippany-Troy Hills, 13 N.J. 172 (1953). The principle of ultra vires will not be enforced to give one an unconscionable advantage over another, and municipalities, like individuals, are bound by principles of fair dealing.
The defendant, having at least implied authority to hire architects prior to submission of its program of additional school facilities to the voters, had the authority not merely to enable it to present a bare cost figure to the voters but to prepare and submit the best plan for the schools then in contemplation in the township. There was testimony that the revised plans improved the proposed *79 facilities. The power to hire architects to prepare preliminary plans should not be so constricted as to preclude consideration of other matters than ultimate costs. The voters are entitled to have submitted to them the general substance of the contemplated program before they can intelligently exercise their suffrage. Accordingly, the board would be obliged to incur necessary expenses to inform themselves, as laymen, of the nature of the work contemplated, and we cannot say that the preparation of models and maps toward that end was so unreasonable as to be without the board's authority as a public body.
Defendant argues with much stress that the plaintiffs' services subsequent to June 30, 1955 were directed toward encouraging and persuading the voters to approve the school program and bond issue, and hence ultra vires. However, the Supreme Court, in Citizens To Protect Public Funds v. Board of Education of Township of Parsippany-Troy Hills, supra, stated that the power conferred by N.J.S.A. 18:7-77.1 to authorize expenditures for "(b) the building, enlarging, repairing or furnishing of a schoolhouse or schoolhouses," by clear implication includes "the making of reasonable expenditures for the purpose of giving voters relevant facts to aid them in reaching an informed judgment * * *." The limitation on this spending authority appears to permit the board to inform the voters, but the presentation must "include all consequences, good and bad" (13 N.J. at page 180), and expenditures will be held invalid where the presentation to the voters is "unfair." Here, there is no charge, nor proof, that the school program was not fairly submitted to the voters, or that they were not adequately informed of the "bad" features, which might well include the cost. City Affairs Committee v. Board of Com'rs of Jersey City, 134 N.J.L. 180 (E. & A. 1945). Indeed, the eventual result of the referendum clearly indicates that the voters were quite aware of factors militating against approval of the projects. Therefore, the expense, even if made solely for the purpose of informing the public, was not thereby rendered ultra vires. (Cf. Giblin v. Charter *80 Comm. of City of Newark, 27 N.J. Super. 411 (Law Div. 1953). See concurring opinion of Justice Heher in Parsippany case, supra (13 N.J. at page 182).)
We find that there was an obligation stemming from the resolutions of May 11, 1955, and continuing until the referendum held on November 15, 1955, on the part of the plaintiffs to render the services which they here performed and to prepare plans and cost estimates, and on the part of the defendant to pay for those services. While defendant contends that the plaintiffs' services terminated on June 30, 1955, we are satisfied that these services continued thereafter. The defendant saw the continuance of these services and took no action of any kind to terminate plaintiffs' employment, which it might have done if it was its intention that plaintiffs' services were to be terminated at a date prior to November 15, 1955.
The complaint seeks a judgment for $46,875 for plaintiffs' services, which as already stated is 1 1/2% of the estimated cost of $3,125,000 for the three projects which were approved by the state agencies.
Backes, one of the plaintiffs, testified, in considerable detail, to the procedure followed in arriving at the estimated total costs. He testified that while cost per cubic foot is a standard of determination, there were other factors to be considered, as the materials and nature of construction, and changing market prices; and that the plaintiffs actually contacted contractors to ascertain prevailing costs. He also testified that the estimated cost included such items as land, equipment and fees. He further testified as to the estimated cost of each project. He stated that the total estimated cost for the three projects was $3,800,000, the amount submitted to the voters. The record does not disclose all the items attributable to "non-construction" expenses, so we do not know exactly how the figure of $3,125,000 was arrived at as the "estimated construction cost," approved by the state agencies and the amount upon which plaintiffs based their fee.
*81 The testimony pertinent to the reasonableness of plaintiffs' charges, in addition to the testimony of Backes that the fee of $46,875 was reasonable, was corroborated by Cutler, who testified that the amount sought was reasonable for the services rendered, which included the time spent by employees of the plaintiffs, as well as the plaintiffs' partners, and was consistent with the schedule of the American Institute of Architects which stipulates that upon completion of the preliminary services, 25% of the agreed upon fee based upon reasonable estimated costs should be paid, and that the amount of the architect's fees is customarily determined by a percentage of the project cost.
The Legislature has recognized that in the construction of certain public buildings, the payment for the services of architects shall be at a rate not in excess of the schedule of minimum charges adopted by the American Institute of Architects. R.S. 30:3-8.
Defendant further argues that it was error to admit evidence of the estimated cost of the projects in determining the reasonableness of the fee, citing Rowland v. County of Hudson, 7 N.J. 63 (1951). However, the Rowland case, unlike ours, did not involve the preparation of preliminary plans and cost estimates. The Supreme Court there stated that the plans were subject to "perhaps radical" revision, and consequently an estimated cost figure was not only estimated but was not based on plans which had received the board's approval. Here the preliminary plans were completed, approved by the defendant board, the state agencies, and submitted to the voters. In the Rowland case the court pointed out that its decision holding that basing recovery on estimated costs was improper, was limited to the facts of that case, and emphasized the incompleteness of the plans, lack of board approval, and the death of the architect during his employment. Moreover, the court in distinguishing Kent v. Darman, supra, seems to have sanctioned the use of an estimated cost where the plans had been completed. Cf. 6 C.J.S. Architects § 16, p. 312, note 81. In the Rowland case it should be observed that the court rejected as the *82 sole test in a suit on quantum meruit an evaluation of the actual time spent on a project by the architects and their staff members. It is our opinion from all of the proofs that the charge made by the plaintiffs was reasonable.
Defendant argues that it was improper to permit evidence of how plaintiffs were compensated under a prior contract with the defendant relative to the Steinert and Sayen Schools as evidence of their intention for the payment of services in the instant matter, although it made no objection thereto. Objection was made at the trial to the admission of testimony as to plaintiffs' overhead costs in the operation of its business, wages paid to draftsmen, annual expenses, profit and loss statement, all of which we consider incompetent and irrelevant, as there well might have been many other factors that would affect plaintiffs' income, but not here pertinent.
We agree that the present cause of action is based upon quantum meruit  the reasonable value of plaintiffs' services  and not upon the terms of a prior agreement entered into by these parties; further, that in evaluating plaintiffs' services the evidence must be confined to the services comprehended by the implied understanding here involved. 6 C.J.S. Architects § 20, p. 324. However, as noted above, no objection was raised as to part of this testimony. Whether the trial court considered the prior contract or the operation of plaintiffs' business as a basis for arriving at its determination is of no moment in view of our consideration of the merits.
Our review of the proofs and the ultimate finding discloses that the trial court made limited findings that "plaintiffs did the work they were retained to do, and the work that they did do in a highly satisfactory manner." There is no finding of fact that the plaintiffs were entitled to recover for work performed after June 30, 1955, or that compensation on the basis of estimated costs may be awarded and the percentage. The court did find that the letter of January 3, 1955, and its acceptance by the defendant, was a contract to govern the measure of compensation for the *83 three projects in question, although later the court stated that the January contract was only a "factor" in determining reasonable compensation. However, the court considered other "factors," which enables us to assume that its statement was merely an oversight and not indicative of its reasoning.
However, any deficiency in the findings by the trial court may be rendered immaterial by the exercise of our original jurisdiction to make findings of fact, which would seem particularly desirable in the circumstances of this case. R.R. 1:5-4. The record is voluminous, both sides called numerous witnesses, and we are impressed that both litigants were given full opportunity to present their proofs. We have grave doubts that other proofs could have been, but were not, submitted. We therefore make the following findings of fact on the competent and material evidence adduced.
We find that the services rendered by plaintiffs up to June 30, 1955, are properly characterized as the "preliminary plans"; that the revision of the plans and the supplemental work looking toward the referendum on November 15, 1955, were known to and authorized by defendant; and that a fair estimate of the cost of construction of the project was $3,125,000, as testified to, and 1 1/2% thereof, or $46,875, was fair compensation for the services rendered by plaintiffs. We also hold that in view of the American Institute of Architects standards and the testimony of various witnesses, both of the plaintiffs and the defendant, consideration of the estimated costs was proper in determining the reasonableness of the amount to be paid to the plaintiffs for their services. 3 Am. Jur., Architects, § 11, p. 1004; Annotation, 20 A.L.R. 1359. We consequently find that the judgment of $46,000 for services was not in excess of their fair value and is fully justified as a matter of law.
Defendant objects to the trial court's allowance of interest on the amount of the judgment, calculated from December 2, 1955, at the rate of 6%. The plaintiffs' services *84 extended over a period from March 1955 to November 15, 1955. It was on December 2, 1955 that the statement for services in the amount of $46,875 was presented to the defendant for payment. The defendant concedes that the plaintiffs rendered services to June 30, 1955, and should be paid the sum of $5,806.32. However, the plaintiffs demanded judgment of 1 1/2% of the estimated cost of the three projects in the sum of $46,875, plus interest, although summary judgment was awarded in the sum of $46,000.
Defendant denies that plaintiffs' claim was for a liquidated sum and asserts that the damages were incapable of ascertainment by mere computation and that substantial controversy exists as to the amount due. It is sometimes difficult to determine when a claim is liquidated, and it varies with the purpose for which the term is used. Here, we are of the opinion that the plaintiffs were entitled to payment of substantially the amount billed to the defendant. While the formula of 1 1/2% of estimated construction cost is not conclusive of the reasonable value of the services, and an estimate of construction cost was not fixed and certain, we are of the view that defendant was clearly unreasonable in the position it took as to its obligation for the services rendered and their value. The allowance of interest is permitted where the injury suffered should have been made good when the amount due was requested. If the money due had been paid, plaintiffs would have had the use of all the money so due them. The test in a case of this kind, where the amount due is not a liquidated debt but where defendant's attitude toward payment of the obligation was substantially unwarranted, is to be found in "considerations of justice and fair dealing." See Dial Press, Inc., v. Phillips, 23 N.J. Super. 543, 551 (App. Div. 1952).
Nor does a claim predicated upon quantum meruit necessarily preclude the allowance of interest. 5 Corbin on Contracts, §§ 1046 to 1052, pp. 237 to 260. The plaintiffs have already fully performed their services and the defendant has been enjoying the benefit of such performance, notwithstanding the plan was defeated. In all justice, equity *85 demands that the plaintiffs be awarded interest bearing on a legitimate claim for services rendered. Cf. Jardine Estates, Inc., v. Donna Brook Corp., 42 N.J. Super. 332, 340, 341 (App. Div. 1956). Therefore, plaintiff is entitled to interest on the sum of $46,000 from December 2, 1955, at 6%.
In conclusion, we decide that the plaintiffs are entitled to recover for their services as determined by the trial court. All the work that was done by the plaintiffs herein may be characterized as "preliminary services" for which the board of education has the implied power to contract. Sleight v. Board of Education of Paterson, supra. In addition, even if it be argued that this work is beyond "preliminary services," it is still within the implied power, and indeed the duty, of the board of education to inform the public of the proposed construction pursuant to Citizens To Protect Public Funds v. Board of Education of Township of Parsippany-Troy Hills, supra. There is ample evidence to support the factual conclusion that all the work was requested and was of use by the defendant as well as by others. The measure of damages as used by the trial court, based upon quantum meruit, was not error. One and one-half per cent of the estimated construction cost is a reasonable basis upon which to determine the value of plaintiffs' services. It is also to be noted that there was testimony that defendant's 1956-1957 budget contained moneys sufficient to pay the bill of the plaintiffs. Ample evidence, from which we have made findings of fact, supports this determination. Finally, in consideration of the equities, the award of interest was proper.
The judgment on appeal is affirmed.